The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ballance (and the briefs and oral arguments before the Full Commission). The appealing party has shown good ground to reconsider the evidence. The Full Commission affirms the decision of the Deputy Commissioner with the exception of the of the award of temporary total disability benefits.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law, the following which were entered into by the parties at the hearing and in the Form 21 agreement for compensation for disability filed herein as
STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of injury.
3. The date of injury is 21 March 1992.
4. The average weekly wage of plaintiff at the time of injury was $419.30.
5. The employer is self insured and the servicing agency is GAB Business Services.
6. The medical records from Scotland Memorial Hospital consisting of 7 pages and the medical records from Duke University Medical Center consisting of 24 pages are stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of hearing, plaintiff was twenty-four years old with a high school education. Plaintiff had been employed by defendant-employer for approximately two years and five months prior to his injury.
2. Plaintiff, who is right-hand dominant, sustained an admittedly compensable injury by accident to his left hand on 21 March 1992 when his hand was crushed and burned in an injection press which malfunctioned. Plaintiff and defendant entered into an agreement for compensation for disability (Form 21) which was approved by the Industrial Commission on 15 January 1993. Pursuant to said agreement, plaintiff has been paid compensation for temporary total disability since 22 March 1992.
3. As a result of said injury, plaintiff has undergone surgical amputation of his thumb, first, second and third fingers and most of his fourth finger. Plaintiff has also undergone skin grafting and reconstructive plastic surgery. Plaintiff has no functional use of his left hand and continues to suffer pain to the left hand.
4. Plaintiff's surgery and follow-up treatment was performed by Dr. William J. Barwick and his assistant, Dr. Hubert Gates. Also, subsequent surgery upon the plaintiff was performed by Dr. Onye E. Akwari. According to the clinic note dated 28 May 1992, Dr. Barwick intended at some point in the future to put a toe on plaintiff's thumb and to try to deepen his web space to allow his little finger to move a little bit better.
5. After the death of Dr. Barwick, follow-up treatment for the plaintiff was assigned to Dr. Scott Levin and plaintiff first treated with Dr. Levin on 25 September 1992. Plaintiff was referred for a prosthetic device. According to Dr. Levin, the prosthetic device that plaintiff received benefits and functions only to manipulate some fingers. It acts more as a paperweight and would not allow plaintiff to pick up objects and move things around. The only help a prosthetic device would offer plaintiff in the job environment would be to help him push a button.
6. As of the date of the original hearing, plaintiff continued to experience discomfort and some burning and pain in his amputated hand. Plaintiff also had not resolved the issue of further surgical intervention, and whether he would accept additional reconstructive surgery to his hand. Dr. Levin had previously discussed with plaintiff the possibility of a toe transplant, a bone lengthening process and a surgical procedure that involved web space deepening.
7. On 11 February 1993, plaintiff sought treatment with Dr. Robert A. Fleury, a psychiatrist who also holds a medical degree in family medicine. Dr. Fleury initially diagnosed that plaintiff was suffering from major depressive disorder and later, found that plaintiff also suffered from post-traumatic stress disorder. Plaintiff's major depressive disorder and his post-traumatic stress disorder were causally related to his injury of 21 March 1992. Dr. Fleury referred plaintiff to Lillie Rowe, a certified biofeedback technician and counselor for supportive psychotherapy and relaxation training. Plaintiff began counseling and therapy sessions with Lillie Rowe on 17 February 1993 and continued therapy with her on approximately a monthly basis from said time through the date of hearing with the exception of approximately a three-month period prior to September 1993 when he did not receive therapy.
8. Plaintiff was offered a job as a touch-up painter beginning 20 September 1993 by defendant-employer. The job was classified as sedentary to light work and could be performed using one hand. No lifting was required, since defendant accommodated plaintiff's lifting restrictions by stacking boxes prior to the start of plaintiff's shift. A supervisor was constantly present to provide assistance. This job was not a "make work" job but was one performed by approximately 100 employees, including one who has only partial use of one hand. The work area was removed from the area of the plant where the accident occurred, and there was no machinery in close proximity to the work station. The job paid $9.18 per hour.
9. This position had been determined to be appropriate by Lynne R. Boddie, the vocational rehabilitation consultant that defendant had hired to facilitate plaintiff's return to work. The job description for this position had also been approved by Dr. Scott Levin.
10. Plaintiff refused to accept this position, which was suitable to his work restrictions, because he felt unsafe or "insecure" while in the plant where the accident occurred. In the opinion of the Commission, plaintiff did not justifiably refuse this offered position which was suitable to his capacity to earn wages.
11. The treatment rendered to plaintiff by Dr. Fleury was not authorized by defendant-carrier. The undersigned find, however, that said treatment was reasonably required to effect a cure, give relief and/or to lessen plaintiff's period of disability.
12. As a result of the compensable injury by accident, plaintiff has a one hundred percent permanent functional impairment to his left hand.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 21 March 1992. As a result of said injury, plaintiff sustained a one hundred percent (100%) permanent loss of use of his left hand due to amputation of his thumb, first, second, and third finger and partial amputation of his fourth finger, extensive reconstructive surgery and skin grafting. N.C. Gen. Stat. § 97-2(6).
2. As a direct result of plaintiff's 21 March 1992 injury, he developed psychological conditions that were diagnosed as major depressive disorder and post-traumatic stress disorder. The treatment provided to plaintiff by Dr. Fleury, a psychiatrist, is hereby approved. Said treatments were reasonably required to effect a cure, give relief and/or tended to lessen plaintiff's period of disability. Authorization for such treatment was timely sought. Defendant's refusal to authorize psychiatric treatment to plaintiff under the circumstances of this case was unreasonable. N.C. Gen. Stat. § 97-29 and 97-25.
3. If an injured employee refuses employment procured for him which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. N.C. Gen. Stat. § 97-32.
4. As a result of the compensable injury by accident, plaintiff was disabled from work and is entitled to receive temporary total disability compensation at the rate of $279.55 per week from 21 March 1992 through 20 September 1993. Plaintiff is not entitled to continued temporary total disability compensation since, in the opinion of the Commission, plaintiff's refusal to accept employment offered to him after 20 September 1993 was not justified. N.C. Gen. Stat. § 97-29, 97-32.
5. Plaintiff is entitled to compensation at the rate of $279.55 per week for two hundred weeks for the one hundred percent permanent disability he sustained to his left hand as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-31(12).
6. Defendant is entitled to a credit for any temporary total disability paid plaintiff after 20 September 1993. N.C. Gen. Stat. § 97-42.
7. Plaintiff is entitled to have defendant pay for all medical treatments incurred or to be incurred in the future for so long as said treatments and evaluations are reasonably necessary to effect a cure, give relief and/or tend to lessen plaintiff's period of disability. The approved medical expenses include treatment of plaintiff's psychological condition.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $279.55 per week from 21 March 1992 through 20 September 1993. This compensation has already been paid to plaintiff by defendant.
2. Defendant shall pay compensation to plaintiff at the rate of $279.55 per week for two hundred weeks beginning 21 September 1993 for the one hundred percent disability to his left hand as a result of the compensable injury by accident. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendant is entitled to a credit for temporary total disability compensation paid to plaintiff after 20 September 1993.
4. Defendant shall pay all expenses incurred by plaintiff for medical treatment resulting from plaintiff's compensable injury including such future medical treatments as may reasonably be required to effect a cure, give relief and/or tend to lessen plaintiff's period of disability. The approved medical expenses include all psychiatric and psychological treatments provided to plaintiff by Dr. Robert A. Fleury and Lillie Rowe and for any other reasonable psychiatric and psychological treatments for so long as such treatments may reasonably by required to effect a cure, give relief and/or lessen his period of disability.
4. A reasonable attorney's fee of twenty-five percent (25%) of the award due plaintiff herein is hereby approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to his counsel.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ JAN PITTMAN DEPUTY COMMISSIONER
LKM:bjp